No. 15,629.

WISE *v.* THOMAS ET AL.
(188 P. [2d] 444)

Decided December 8, 1947.   Rehearing denied January 5, 1948.

Messrs. QUIAT & GINSBERG, Mr. NATHAN H. CREAMER, for plaintiff in error.

Mr. CHAS. W. V. FEIGEL, Mr. WM. O. DeSOUCHET, for defendants in error.

Mr. JUSTICE HILLIARD delivered the opinion of the court.

AN action by defendants in error, plaintiffs below, against plaintiff in error, defendant, to quiet title to lands described in the complaint, two lots and a residence in Boulder. Plaintiffs claimed under a conveyance solely from the wife of defendant. Defendant claims under a statutory homestead entry which he had made prior to such conveyance, of which plaintiffs had both constructive and actual notice. Plaintiffs enjoyed favorable judgment.

It appears that July 11, 1940, and prior thereto, the wife of defendant was the record owner of the property involved; that on said date, as well as from the inception of her title thereto, defendant and his wife and their minor daughter were, and had been, residing on said property as a home; that on said date, and proceeding in accordance with sections 23 and 24, chapter 93, '35 C.S.A., defendant, as husband, made an entry of homestead on the margin of the record of the deed of the property to his wife; that September 19, 1940, defendant's wife sued him for divorce, and as an incident thereto caused entry of an order of court requiring him to cease living in the premises involved, after which time, acting on the advice of counsel, and in obedience of said order, the husband absented himself from the property. Incidentally, as further appears, the wife took no further steps in the divorce action, and, in consequence, the court, proceeding March 6, 1944, dismissed

it for lack of prosecution, subject, however, to the right of the wife, proceeding at any time within three months, to cause the action to be reinstated. She took no such steps; hence, as is not questioned, dismissal of the action became final. It follows that defendant and Iva A. Wise, to whom we hereinafter refer in connection with the conveyance of the property involved, alleged as having taken place June 21, 1943, are, and at all times important to this review, and long prior thereto, were, husband and wife.

It further appears that June 12, 1943, plaintiffs contracted with Mrs. Wise, who, with her daughter, was, and since the property had been conveyed to her, had been, living thereon, to purchase it, including furniture therein, at an agreed price of thirty-two hundred fifty dollars, and as earnest money they paid one hundred dollars to Mrs. Wise. On examination of an abstract of title of the real property, counsel for plaintiffs learned of the homestead entry by defendant, and advised his clients that, "that entry constituted a cloud on the title;" that June 18, 1943, plaintiffs, emphasizing to Mrs. Wise what their counsel denominated a "cloud on her title," and the risk involved in taking her deed for the property, prevailed upon her to accept, not thirty-two hundred fifty dollars, as originally agreed, but four hundred dollars less, or slightly more than twenty-eight hundred dollars. Incidentally, considering the amount of encumbrance on the property, Mrs. Wise who, under the first contract of sale to plaintiffs, would have received in excess of fourteen hundred dollars in cash, under the new agreement received only one thousand dollars, on which the one hundred dollars originally deposited applied. June 20, 1943, Mrs. Wise vacated the property, and plaintiff Anderson slept there that night. The next morning, or June 21, Mrs. Wise and plaintiffs met at their lawyer's office, when she signed a deed of conveyance, and plaintiffs paid her nine hundred dollars, which, plus one hundred dollars deposited with her on account thereof,

already mentioned, equalled the sum latterly agreed upon. Proceeding in writing at the time of such conveyance, counsel for plaintiffs, reciting "that the premises you are purchasing are not occupied by the owner thereof or her family, she having removed therefrom and have not been occupied by J. LeRoy Wise [defendant] since the time of his marginal entry," advised that, "that J. LeRoy Wise could not successfully maintain his claim for a homestead right, assuming that he should make such claim at some future date. Nevertheless," counsel thoughtfully added, "the entry of this marginal homestead constitutes a cloud on the title and you are taking a risk in accepting the title as shown by the abstract." Only hours prior to executing the deed, and receiving the balance of the price, reduced because of the "risk" the purchasers were taking, as is undisputed, Mrs. Wise vacated the property. In addition, the record shows that aside from formalities, postponed until June 21, plaintiffs became "owners" while Mrs. Wise still was occupying the property, as witness the testimony of plaintiff Anderson, as follows: "Q. You were not the owners of it until the 21st of June? A. Well, we were the owners but we hadn't made the settlement for it."

We now cite, and in the light of the record, examine the statutes referred to by counsel. Section 23, chapter 93, '35 C.S.A., dates from 1838, and has not been amended. It provides that a householder, "being the head of a family, shall be entitled to a homestead not exceeding in value the sum of two thousand dollars, exempt from execution," etc. Section 24, same chapter, provides that the right of "homestead" is established by causing entry thereof to be made on the margin of the record of the title of the property involved. It may be done by the owner thereof, or by the wife or husband of such owner. This, also, is an ancient statute, but our deductions therefrom are in the light of its status as amended in 1911. S.L. '11, p. 452, §1. How a homestead may be conveyed or encumbered, is set forth

in chapter 150, section 13, Session Laws 1927, page 592 ('35 C.S.A., chapter 40, section 119). It reads: "To convey or encumber a homestead, both the husband and wife must execute a conveyance or encumbrance of their respective interests therein. Such conveyance or encumbrance may be one instrument in writing signed by both husband and wife or by their separate instruments in writing, and no special form or acknowledgment other than the form specified by this article shall be necessary; * * * ." We note in passing, that, although this section was amended in 1947 (S.L. '47, p. 359), the portion we have quoted was not changed or modified. That at the time of the conveyance by Mrs. Wise to plaintiffs, the property described therein was a "homestead," having become such by the act of defendant, already set forth, as is admitted. The reliance of plaintiffs is the conveyance which the wife alone executed and delivered to them. Was such deed effective to pass title? We are persuaded that it was not. "According to the weight of authority, a conveyance or encumbrance of the homestead property by only one of the spouses is invalid and ineffectual in the sense that the invalidity thereof may be taken advantage of by either the husband or wife, or by a third person, as if no deed had been executed." 26 Am. Jur., p. 82, §130. "Where both spouses are required to join in a conveyance or encumbrance [In Colorado husband and wife may convey by one instrument or by separate instruments, but both *must convey*], a conveyance or encumbrance executed by only one of them is, according to a view generally * * * entertained, ineffectual to pass title or to create a valid lien." Ibid., p. 85, §133. "Where the constitution or a statute so requires, a homestead can be alienated or encumbered only with the consent and joinder of husband and wife." 40 C.J.S., p. 567, §130. "As a general rule, the effect of these provisions is to prohibit all methods of alienation or encumbrance other than those therein designated, and a conveyance or mort-

gage of homestead property by one spouse, in which the other spouse does not join as required by law, is generally held to be void, both as to his interest and her rights therein. * * * . The fact that a full consideration was paid cannot prevent the operation of the rule established by the statute that a conveyance by the husband without the joinder by the wife is invalid." Ibid., pp. 568, 569. Here, we pause to emphasize, full consideration was not paid. Plaintiffs, in consideration of a reduced price, although warned by their counsel, assumed the "risk" involved. "No alienation of the homestead by the husband alone, in whatever way it may be effected, is of any validity; nothing that he can do or suffer to be done can cast a cloud upon the title; it remains absolutely free from all grants and incumbrances, except those mentioned in the Constitution. *Morris v. Ward,* 5 Kan. 239. Efforts have been made to ingraft exceptions arising out of the supposed necessities of the case, upon similar constitutional provisions or statutory enactments, but in all states save one, so far as we have examined the authorities, they have uniformally failed; for it must be remembered that it is not the homestead of the husband alone, though the title be in his name; it is the homestead of the family, made so by the Constitution.

"Provisions similar to that of our Constitution are found either in the Constitutions or statutes of the great majority of the states of the Union, and, * * * conveyances made or attempted by the husband, without the consent of the wife, given in the manner prescribed by law, are held to be void. Many of the authorities are collected in the notes to *Poole v. Gerrard,* 6 Cal. 71, 65 Am. Dec. 481 [an exhaustive list].

"Much stress is laid upon the fact that Mary F. Whelan had voluntarily abandoned her husband, and notwithstanding his entreaties for her return, had continued to absent herself from the homestead, and to live separate and apart from her husband. The finding of the

trial court, however, was to the effect that the abandonment was not voluntary, but was caused by the threats and ill-treatment of the husband. We deem the fact of what caused the wife to leave and remain away from home, and whether her abandonment was voluntary or involuntary, as immaterial. They were still husband and wife, never having been divorced, and there is no exception written in our Constitution authorizing the husband to sell the homestead without the wife's consent upon her voluntary abandonment of him. Neither are we disposed to write into the language used an implied exception." *Whelan v. Adams,* 44 Okl. 696, 145 Pac. 1158. In the foregoing case, the wife had abandoned her husband. In a Tennessee case where a husband had deserted his wife, the court said: "The relation of husband and wife is not dissolved, done away with, or destroyed by the desertion of either spouse by the other. Only death, or the decree of a competent court in this state, ends it. * * * Homestead is in no correct legal sense a separate property right of the wife when her husband is living. It may be, in a sense, a joint property right of the husband and wife while both are living; and, being so, it can be alienated, under the constitution, only by their joint consent, manifested in the mode prescribed by our legislation. * * * The joint consent exacted by the constitution and statute means a concurrence and agreement of the husband and wife to sell or transfer their homestead, which, to be effective, must be evidenced by a deed or instrument of writing signed, executed and delivered as required by law. To hold that one spouse can execute a deed conveying the homestead without consulting and having the joinder of the other in it, and thereafter the other can sell it without consulting and having the former join in it, it seems to us, opens the door for the evasion of the plain mandate of the constitution regulating the mode of the transfer of this important property right, designed for the benefit of the heads of families, and especially married women." *Couch v. Cap-*

*itol Building & Loan Ass'n*, Court of Chancery Appeals of Tennessee, not officially reported, 64 S.W. 340.

Mainly, controversies concerning "homesteads" involve attempts of judgment creditors to levy on homestead property, their justification being that the claim of homestead was of property valued in excess of two thousand dollars, and they wished to realize on the excess, or, that the owner and his family had vacated the property, etc. Neither of the considerations which creditors may invoke in justification of levies, is of importance here. *Whelan v. Adams, supra.* In the earlier days the owner of homesteaded property, proceeding regardless of his wife's wishes, could convey or encumber it at will. At a later period, although he still could convey such property, to encumber it the statute required that his wife join in the execution of the pertinent instrument, and make acknowledgment separate and apart. In 1927, however, in an act entitled "An act concerning real property and to render titles to real property and to interests and estates therein, more safe, secure and marketable," the legislature set forth the steps required "to convey or encumber a homestead." The pertinent section of the act is quoted earlier in this opinion. In brief, the requirement is, that, regardless of which has title to the homestead, "both the husband and wife" must execute conveyance, failing which, as the authorities we have reviewed make plain, a conveyance executed in the manner of that upon which plaintiffs rely, that is to say, executed only by the wife, necessarily is ineffective and void.

Had plaintiffs here proceeded innocently and unadvised, the pronouncement which the law requires at our hands, would be made with regret; but they may not lay claim thereto. They are experienced real-estate dealers, and men of affairs. Moreover, their counsel pointed out the hazards involved. Instead of stopping at the threshold, which a moiety of prudence would have prompted, they employed the "flaw" in inducing

a substantial reduction in the price from that which already they had agreed was the value of the property. The reduced price which they prevailed upon the wife to accept, in itself justifies the statute requiring that to make conveyance of a homestead there must be, as in this instance, another signature, namely, that of the wife's husband.

Let the judgment be reversed, and the cause remanded with directions to the trial court to adjudge that plaintiffs take nothing on their complaint, and on defendant's cross complaint to adjudge that the deed which the wife made of the property involved, is noneffective and void; also that defendant be adjudged to have right of possession of the premises, from which, however, should his wife desire to share therein, he shall not exclude her.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE ALTER concur.