ALLISON FORD SALES, appellant, v. FARMERS STATE BANK, appellee.

No. 49267.

(Reported in 86 N.W.2d 896)

December 17, 1957.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellant.

Moyer & Allen, of Marion, for appellee.

LARSON, J.—The sole question raised by this appeal is whether a regular indorsement on a note attached by perforation to a conditional sales contract is qualified by the language of the assignment and warranty on the contract.

Allison Ford Sales, plaintiff herein, transferred to defendant, Farmers State Bank, a conditional sales contract and attached note covering the sale of an automobile to one Clyde Howrey. Payment being in default, after demand on plaintiff, defendant debited plaintiff's account in the amount then claimed due of $534.84. Action was commenced October 11, 1953, and upon joint application under stipulated facts, the trial court under rule 105 held that the note was duly transferred to the bank by an unqualified indorsement. Judgment was rendered for defendant.

The indorsement on the note stated: "Pay to the order of Farmers State Bank, Marion, Iowa. Allison Ford Sales by H. Cerney, Bkpr." As a part of the attached conditional sales contract appeared a printed "assignment and warranty" which had been signed and executed by plaintiff. It provided:

"For value received, the undersigned hereby sells, assigns and transfers to Farmers State Bank, Marion, Iowa, its successors or assigns, this contract, the note herein referred to, and property therein described and hereby warrants and represents: That the written instrument is genuine; that the statements of fact and statements of transaction are correct; that the property herein described is free from all liens and encumbrances; that the undersigned has good title to the property and the right to transfer the same; and that the statements made by the purchaser on the purchaser's statement are true to the best of the undersigned's knowledge and belief; that all the parties to this instrument have the capacity to contract. Upon demand, after

breach of any of these warranties, the undersigned agrees to buy said contract and note from assignee or assigns and to pay therefor the amount owing thereon. Allison Ford Sales by Howard C. Cerney, Bkpr."

By stipulations it was agreed nothing was paid by Howrey on the note and none of the above recited warranties was breached. The trial court held that while the two instruments must be considered together, the language of the "assignment and warranty" was not sufficient to qualify the implied promise to pay of the general or regular indorsement on the note. We agree.

I. The legal effect of a regular or general indorsement on a promissory note may be limited as between the parties by a contemporaneous agreement. 10 C. J. S., Bills and Notes, sections 211, 214, pages 697, 701; 8 Am. Jur., Bills and Notes, section 1118, page 665; 10 C. J. S., Bills and Notes, section 44, page 483; Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204; Hubbard v. Wallace Co., 201 Iowa 1143, 208 N.W. 730, 45 A. L. R. 1065; Hawkeye Securities Fire Ins. Co. v. Central Trust Co., 208 Iowa 573, 221 N.W. 486. A contemporaneous agreement in writing, attached or with knowledge accepted, is to be taken and considered in connection with a given instrument. That the two are to be construed together is so well and generally established in all jurisdictions as to require no citations. It is general contract law and is in most respects applicable to cases involving negotiable instruments. Todd v. State Bank, 182 Iowa 276, 289, 165 N.W. 593, 3 A. L. R. 971; Hubbard v. Wallace Co. and Davis v. Brown, both supra.

II. The implication of liability of an indorser arising under law merchant is so strong that clear words of negation are required to overcome it or to limit and qualify an indorsement of a negotiable instrument. Certain implications necessary to the so-called law merchant as well as pronouncements in statutes pertaining to negotiable instruments provide well-recognized and definite rules to aid in the determination of the intention of the parties executing transfers involving negotiable instruments. The learned trial court recognized this truth and concluded "that the warranties and statements in the assignment do not [legally]

manifest an intention of the parties to limit or qualify the indorsement" on the note.

In determining the intention of the parties by reference to the words used in the transfer of negotiable instruments, we must apply rules recognized as peculiar to the law merchant, not necessarily as to contracts generally. Words of negation must appear in the instrument or contemporaneous instruments to overcome the implied legal liability imposed by a regular indorsement. Thus, if the words in a contemporaneous agreement are "without recourse" or warranted as to certain things "and no others", or where one agrees to repurchase if warranties are breached "only as to these matters" or any similar phrases which clearly negative the implication of an unqualified indorsement, then and only then will the indorsement be considered qualified. See Hawkeye Securities Fire Ins. Co. v. Central Trust Co., supra. Generous consideration was given to such wording in the case of Jones County Tr. & Sav. Bk. v. Kurt, 192 Iowa 965, 972, 182 N.W. 409.

In discussing the import of language indicating an intention to both assign and indorse negotiable paper, we said on page 976 of 192 Iowa, page 415 of 182 N.W.:

"When words are used on the back of the instrument, expressing an intent to negotiate, followed by the signature of the payee, the negotiation, under the law merchant and the statute, becomes complete upon delivery. The law then implies a contract to pay upon demand, and notice of nonpayment. The one to whom the note is transferred with such indorsement on the back stands protected against any equities existing between the original parties. The intent to negotiate may be evidenced by any words expressive of such intent, as 'transfer,' 'assign,' or 'pay over to the party named.' The fact that the payee assumes other distinct obligations to the transferee does not negative the implication arising from the use of the words indicating an intent to negotiate, followed by the act of negotiation."

It was also held there that the use of the language, " 'I do hereby assign the within note to' " did not make the transfer a mere assignment and did not negative its negotiability or relieve the payee from his obligation thereunder. This court there recog-

nized the rule protecting the implied obligation of an indorser created by affixing one's signature to the back of a note as necessary and proper in the business world.

While there seems to have been some confusion in the overlapping zone affecting both contract and negotiable instrument law, the better view, in order to maintain the free and unrestricted use of negotiable instruments in the mercantile field, requires implications of negotiability be considered strong ones —so strong as to take a great deal more than contra implications to overcome them. See Muscatine Nat. Bk. v. Smalley, 30 Iowa 564; Jones County Tr. & Sav. Bk. v. Kurt, supra.

The question before us then is whether the words used in the contract "assignment and warranty" negative the regular indorsement of the note.

██ ██ Standing alone it is conceded the indorsement on the note was unqualified and would make the plaintiff-indorser liable to defendant. Sections 541.30 and 541.31, Code of Iowa, 1954. This implied intent to negotiate the instrument, we think, could only be altered by a clearly expressed intention to do otherwise in the contemporaneous conditional sales contract. The words used were not unmistakably adverse to the implied obligation under the indorsement, and were not such words as "without recourse." They did not state that after the breach of warranties "and no other" the undersigned agrees to buy said contract and note. We are satisfied they did not clearly *indicate by appropriate words* his intention to be bound in some other capacity, as required in section 541.63, Code, 1954. By "appropriate words", used in the statute, we think, is meant words to negative the liability of the indorser so as to make the transaction a mere sale or an assignment with an agreement to repurchase on condition.

III. Having been cited no Iowa case, nor having found no identical case involving such writings on contemporaneous transfers, in order to obtain enlightenment, it is proper to refer to our pronouncements in cases where additional writings appear on the back of the same note or instrument. In the early case of Muscatine Nat. Bk. v. Smalley, supra, at page 566 of 30 Iowa, we said:

"In this case the defendant is charged upon the contract of

indorsement. In form it is absolute * * *. The waiver of demand and notice therein contained does not deprive it of the character of an indorsement. It is proper to introduce terms of that kind into the instrument and thus *enlarge* the responsibility of the indorser. It is, however, none the less an indorsement * * *." (Emphasis supplied.)

A careful examination of the so-called assignment here discloses that only additional warranties appear in the contemporaneous agreement. Warranties that the conditional sales contract (or the security furnished) is genuine, that statements made therein are correct, that the *property listed in it is free from all liens and incumbrances*, that good title to the (security) property is in the seller, and that certain statements of the buyer of the automobile are correct, are clearly additional to the promises implied by the note indorsement. Assignor agrees to repurchase the contract and note if any of these warranties are breached. The effect of such warranties would seem to be to enlarge responsibilities, and not to make the indorsement of the note any less an indorsement. The remaining warranty that the parties have the capacity to contract is the same with or without the statement in the so-called assignment, and so cannot add or detract from the obligation in the indorsement. Section 541.65, Code of Iowa, 1954.

IV. It must be concluded that the agreement to repurchase the contract and note for the breach of the covenants in the sales contract does not have the effect of altering the obligation of plaintiff to pay on demand and notice of nonpayment imposed by such an indorsement under the negotiable instrument law. Muscatine Nat. Bk v. Smalley and Jones County Tr. & Sav. Bk. v. Kurt, both supra. It must also be concluded the words used fall far short of being clearly negative of the implied obligation fixed by a general indorsement of the negotiable instrument.

In these conclusions we find support in decisions of other jurisdictions. Fay v. Witte, 262 N. Y. 215, 219, 186 N.E. 678, 679; Gillett v. Flora, 68 Colo. 218, 219, 187 P. 527, cited by plaintiff. In Fay v. Witte it is stated that if the payee intended merely to pass the title, he should use the words " 'without recourse' or some phrase of equal import. His liability is implied without words expressly creating it. To be negatived, words should be

used which negate the implication." See also Bigelow on Bills, Notes and Checks, Third Ed., section 256, pages 184, 185; The Written Aspect of Indorsement, 34 Yale Law Journal 151.

In Gillett v. Flora, supra, by the terms of the assignment the mortgage was transferred " 'together with the notes or obligations therein described *without recourse* or in any event or for any cause.' " (Emphasis supplied.) There it was, of course, properly held the assignment and indorsement, being part of one transaction, were one contract, and that the indorsement was a qualified one. No such words were used in the case before us. Had they been so used, perhaps our conclusion would be different. However, the proper functioning of the law merchant makes such a rule or interpretation as announced herein necessary and proper. It is not unreasonable to place the burden of negation on the parties if, in fact, they do not intend the transfer to be an indorsement.

V. Plaintiff admits the words used in the contract assignment are not themselves restrictive, but contends with some logic that when *under certain* set forth *conditions* plaintiff agrees to repurchase, he is saying under all others he will not. It refers to the often used maxim, "expressio unius est exclusio alterius." But that maxim cannot be applied in these matters. More is needed than this implication to negative a fixed liability by a regular indorsement upon a negotiable note. The Latin phrase more applicable is, "expressio eorum quae tacite insunt nihil operatur", or if the payee intended only to pass title with certain guarantees, he must use *restrictive terms* such as "without recourse", or promise to repurchase on a stated basis "and no other."

For further discussion on such liability involving transfer of negotiable instruments see Beutel's Brannan Negotiable Instruments Law, Seventh Ed., pages 259–263; 10 Oregon L. Rev. 176; 26 Michigan L. Rev. 471–491; 33 Nebraska L. Rev. 92; Shawano Finance Corp. v. Julius, 214 Wis. 637, 254 N.W. 355; Uniform Negotiable Instruments Law, section 3.2; 14 Texas L. Rev. 307 (note); Powell & Powell v. Greenleaf & Currier, 104 Vt. 480, 162 A. 377; Perth Amboy Trust Co. v. Modern School Assn., 9 N. J. Misc. 368, 154 A. 418; Utah Lake Irr. Co. v. Allen, 64 Utah 511, 231 P. 818, 37 A. L. R. 651; Equitable Trust Co. of N. Y. v. Harger, 258 Ill. 615, 102 N.E. 209.

It appears to us most of the difficulty experienced by the courts with such matters stems from the question of how the intention of the parties to the indorsement should be determined. Plaintiff's view, with some respectable support, is that from all the words used we should arrive at the intent of the parties, but the weight of authority seems well settled that once the signature is affixed to the back of an otherwise negotiable instrument and delivered to indorsee, the intent to be bound as an indorser is presumed unless negative words, or words of like import, appear which clearly refute the presumed liability and limit it to a sale or simple assignment. We agree with that view. As no such words appear herein, the judgment of the trial court is affirmed. —Affirmed.

All JUSTICES concur.